IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ANNA C.,**[1]

|                              |                          |
|------------------------------|--------------------------|
| Plaintiff,                   | Civ. No. 3:23-cv-00673-MK |
| v.                           | **OPINION AND ORDER**    |

**MARTIN O'MALLEY**,
Commissioner of Social Security

Defendant.
_____

**KASUBHAI, Magistrate Judge:**

Plaintiff Anna C. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

## PROCEDURAL BACKGROUND

Plaintiff's claims for SSI and DIB were denied initially and upon reconsideration. Tr. 122-32. She requested an administrative hearing and appeared before an administrative law judge (ALJ) on November 10, 2021. Tr. 32-59. In a written decision dated January 4, 2022, the ALJ denied Plaintiff's claim for benefits. Tr. 15-25. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 1-5. This appeal followed.

## FACTUAL BACKGROUND

Born in 1972, Plaintiff was 46 years old on the alleged disability onset date. Tr. 24.[2] She alleged disability as of January 1, 2019, due to combined impairments of chronic fatigue syndrome ("CFS"), hypertension, mild vascular neurocognitive disorder, post-traumatic stress disorder ("PTSD"), depression, anxiety, and attention disorder. Tr. 276-77.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 8, provided by the Commissioner.

Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity during November 2019 through December 2019, but that there had been a continuous 12-month period that Plaintiff did not engage in substantial gainful activity, to which the ALJ's findings followed. Tr. 17-18. At step two, the ALJ determined that Plaintiff had the following severe impairments: history of stroke without residuals and chronic fatigue syndrome. Tr. 18. The ALJ also found that Plaintiff had the non-severe impairments of mild vascular neurocognitive disorder, major depressive disorder, and PTSD, but that they do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19.

Prior to step four, the ALJ determined that, despite her impairments, Plaintiff retained the RFC to perform medium work except she should have no exposure to workplace hazards. *Id.*

At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a retail salesperson because this work does not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 23. At step five, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy, including cleaner II, laundry worker I, janitorial worker, basket filler, and garment sorter. Tr. 24-25. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 25.

In this appeal, Plaintiff argues that the ALJ erred by failing to (I) properly analyze Plaintiff's non-severe impairments at Step Two and incorporate them into the RFC; (II) properly evaluate the medical opinion of Patrice Carrello, Ph.D.; and (III) properly assess Plaintiff's subjective symptom testimony. Pl.'s Br. 10-26, ECF No. 11.

## DISCUSSION

## I.    The ALJ Erred in Failing to Discuss Mental Limitations in the RFC Analysis

Plaintiff argues that the ALJ committed reversible error when she found Plaintiff's mental impairments non-severe at Step Two. *Id.* at 10-19. She further argues that the ALJ failed to discuss any restrictions relating to her non-severe impairments in the formulation of the RFC. *Id.* "The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were considered. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment

is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3p, 1996 SSR LEXIS 10 (1996)). If at least one severe impairment is found at step two, and the ALJ moves on to determine the residual functional capacity, the ALJ "will consider all of [an applicant's] medically determinable impairments of which we are aware, including [the] medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523." 20 C.F.R. § 404.1545.

In an unpublished case, *Hutton v. Astrue*, the Ninth Circuit considered whether the ALJ erred by failing to account for plaintiff's non-severe mental impairments in the RFC analysis and in his hypotheticals to the vocational expert ("VE"). 491 Fed. Appx. 850, 850 (9th Cir. 2012). Since *Hutton*, multiple district courts within the Ninth Circuit have remanded social security cases due to ALJs' failure to adequately address mild mental impairment limitations in formulating RFCs. *See Frary v. Comm'r of Soc. Sec.*, 2021 WL 5401495, *10-12, 2021 U.S. Dist. LEXIS 223405, *35 (E.D. Cal. Nov. 17, 2021) (compiling case law finding error based on *Hutton*); *Kramer v. Astrue*, 2013 WL 256790, *3, 2013 U.S. Dist. LEXIS 9229, *7 (C.D. Cal. Jan. 22, 2013) (following *Hutton* and reversing ALJ decision that failed to include mild mental limitations found at Step Two in the RFC determination).

Here, the ALJ found Plaintiff's mental impairments of mild vascular neurocognitive disorder, major depressive disorder and PTSD to be non-severe because they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. Tr. 18. In making this finding, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders, which are known as the "paragraph B" criteria. Tr. 18-19. The ALJ found Plaintiff's mental impairments caused mild limitations in (1) the domain of

understanding, remembering, and applying information, (2) the domain of concentrating, persisting, and maintaining pace and (3) in the domain of interacting with others. Tr. 18. The ALJ found Plaintiff had no limitations in the domain of adapting or managing oneself. *Id*. Overall, the ALJ found mild limitations in three out of four paragraph B criteria. *Id*. Despite these findings, the ALJ did not include Plaintiff's non-severe impairments in the RFC. Tr. 19. As in the cases referenced above, this was error.

The Commissioner argues that the Ninth Circuit's recent published opinion in *Woods v. Kijakazi* alters the state of the law, because it confirmed that mild non-exertional limitations resulting in a non-severe mental impairment do not require express findings in the RFC. 32 F.4th 785 (9th Cir. 2022), reh'g denied; Def.'s Br. 5, ECF No. 13. *Woods* is distinguishable. In *Woods*, the ALJ assessed and evaluated the plaintiff's mental limitations at Step Four by addressing and rejecting a medical opinion containing certain mental limitations. *Woods*, 32 F.4th at 794 ("the ALJ assessed and evaluated Plaintiff's mental limitations at Step 4 by addressing and rejecting a medical opinion containing certain mental limitations."). The court in *Woods* found that the ALJ's rejection of this medical opinion was proper. After properly rejecting the medical opinion relating to plaintiff's mental limitations, the *Woods* ALJ determined that there were no mental limitations left to include in the RFC. This is in line with the precedent discussed above. The ALJ does not necessarily need to incorporate non-severe limitations into the RFC, but the ALJ must consider those limitations in the analysis underlying the formulation of the RFC.

Here, the ALJ did not consider the non-severe limitations in formulating the RFC. Unlike the court in *Woods*, the ALJ did not properly assess and reject the medical opinion of Dr. Carrello, who opined on Plaintiff's mental impairments. As will be discussed, the ALJ improperly considered Dr. Carrello's medical opinion which contains detailed findings regarding Plaintiff's

mental impairments. Had the ALJ properly considered Plaintiff's non-severe impairments, this may or may not have resulted in a more restrictive RFC. Nonetheless, the ALJ was required to do the analysis. For example, the ALJ specifically acknowledged that Plaintiff has problems of fatigue, cognition, lack of motivation, and PTSD. Tr. 21. The VE testified at the hearing that if a person were to be off task for twenty percent or more of their work day, "that would eliminate the person's ability to maintain employment." Tr. 58. The ALJ did not consider whether the mild limitations she found in Plaintiff's ability to persist and maintain pace or understand and apply information should be included in the RFC. This and other non-exertional limitations may have led to a more restrictive RFC, and the ALJ was required to specifically assess them at Step Four. Remand is therefore required.

## II.    The ALJ Erred in Evaluating the Medical Opinion Evidence of Dr. Carrello

Plaintiff challenges the ALJ's assessment of the medical opinion evidence provided by her Psychologist, Patrice Carrello, Ph.D. Pl.'s Br. 17-19. Plaintiff takes issue with the ALJ's evaluation of Dr. Carrello's medical opinion "because she never properly explained why she rejected Dr. Carrello's significant, probative findings" and that while the ALJ acknowledged Plaintiff's PTSD and depression, she concluded that those diagnoses were inconsistent with Plaintiff's treatment history. *Id.* She further argues these findings were not properly evaluated using the factors of supportability and consistency,[3] as the ALJ did not compare Dr. Carrello's medical opinion with

---

[3] The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). Regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Dr. Ju, nor that of Dr. Nicoloff, who also opined on Plaintiff's mental impairments. *Id*. at 16-18. The Commissioner argues Dr. Carrello's neuropsychological evaluation is not a medical opinion at all, because she "did not assess any specific functional limitations, and the ALJ could rationally choose not to rely on her recommendations." Def.'s Br. 8.

Dr. Carrello held four sessions with Plaintiff via telemedicine in 2020 to conduct a neuropsychological evaluation, the purpose being "to assess cognitive abilities in the context of [a] several-year history of worsening short-term memory and attentional skills." Tr. 758. Dr. Carrello administered several objective tests.[4] Tr. 760. Dr. Carrello evaluated Plaintiff's functional limitations in the areas of attention and concentration, memory, and frontal systems paired with executive functioning. Tr. 761-62. Dr. Carrello noted Plaintiff needed "repetition of many of [her] questions and even with a second reading, had trouble holding onto the information." Tr. 761. She also noted "divided attention was in the impaired range (1st percentile)." Tr. 762. Dr. Carrello concluded Plaintiff's test results are "most consistent of a diagnosis of Mild Vascular Neurocognitive Disorder. The sorts of daily challenges she experiences [are] reflected in her neuropsychological performance." Tr. 763. Dr. Carrello elaborated by stating "[s]he has trouble staying focused on a conversation and tracking incoming information, likely because of her weaknesses in attentional control and multi-tasking." *Id*. She further concluded that "[a]lthough her presentation may resemble the symptoms of ADHD, I suspect that brain pathology changes also [underlie] her current cognitive weaknesses." *Id*.

---

[4] Wechsler Adult Intelligence Scale - IV Similarities, Block Design, Digit Span, Arithmetic, Coding, Symbol Search, and Information, California Verbal Learning Test-2, Brief Visuo-Spatial Learning Test-2; Logical Memory from the Wechsler Memory Scale-3; Trail Making Test, Wide Range Assessment of Reading, Wisconsin Card Sorting Test, Category Test (fruits, vegetables, and animals), Rey-Osterrieth Complex Figure Test, Controlled Oral Word Test (letters F, A, and S), Behavior Rating Inventory of Executive Functioning (BRIEF-A), Beck Depression Inventory-2, and Beck Anxiety Inventory. Tr. 760.

Page 9 – OPINION AND ORDER

After reviewing the record, the Court agrees that the ALJ did not properly analyze Dr. Carrello's medical opinion. On one hand, the ALJ placed her discussion of Dr. Carrello's neuropsychological evaluation in the medical opinion section of her decision and ultimately found her opinion "unpersuasive." Tr. 23. On the other hand, the ALJ stated, "Dr. Carrello did not specify functional limitations" and, in turn, did not discuss the factors of supportability and consistency. Tr. 22-23. This is contradictory. As discussed, the detail in which Dr. Carrello documented Plaintiff's mental impairments in relation to her functioning in various areas of life warrant her evaluation to be analyzed as a medical opinion. The ALJ did so, but only in part. This was clear error that resulted in an erroneously formed RFC. Dr. Carrello's neuropsychological evaluation is a medical opinion. "[A] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Dr. Carrello's nine-page neuropsychological evaluation goes into specific detail as to Plaintiff's limitations regarding focus, the intake of information, attention control, and weakness in multi-tasking, all of which affect work-related performance. Tr. 763, 22-23; *see also* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Consideration of supportability and consistency was warranted. The Commissioner's argument, that instead of offering a medical opinion "Dr. Carrello made diagnoses, discussed Plaintiff's generally 'mild' clinical findings on testing, and offered treatment recommendations[,]" is unavailing. Def.'s Br. 8. This error is not harmless, and remand is required to for the ALJ to properly analyze Dr. Carrello's medical opinion on its own, and in light of the entire record.

## III.    The ALJ Did Not Err in Considering Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ improperly rejected her subjective symptom testimony regarding her chronic fatigue syndrome, hypertension, mild vascular neurocognitive disorder,

PTSD, depression, anxiety, and attention disorder. Pl.'s Br. 19-24. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding on the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, available at 2016 SSR LEXIS 4, 2016 WL 1119029, at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

At the administrative hearing, Plaintiff testified that she is "still trying to chase what is wrong with [her]" and that her "history of hypertension is extreme." Tr. 39. She mentioned her history of multiple strokes and that stress sends her into "panic mode." Plaintiff claims she has had PTSD "all of [her] life" and that she does not have the energy to "do the kind of work for [her]self" that would "cover everything that [she] needs[s] in order to survive and thrive in this world." Tr. 40. Despite her impairments, she told the ALJ that she runs a small business selling "antiques, books, [and] summer of porcelain." Tr. 37. The ALJ then asked her if she made enough to support herself, she declined and stated that, during her best month, she made "about $350." Tr. 41. Plaintiff also testified she went on "respite" with a friend to Washington state without issue. Tr. 44. Her day-to-day routine includes preparing to buy or sell items for her online business, getting online for two to eight hours per day, preparing her own meals, grocery shopping, and taking public transportation, walking, or bicycling to the places she needs to go. Tr. 36, 43-45. When she can go out, she goes to poetry readings, music shows at bars or meets a friend for coffee. Tr. 46.

Plaintiff argues the ALJ erred in evaluating her subjective symptom testimony by (1) improperly assessing Plaintiff's seasonal work as an unsuccessful work attempt; (2) improperly assessing her ADLs; (3) citing to one examination finding to conclude inconsistency with the record; and (4) finding her impairments improved with treatment and ignored her pursuits of further psychiatric treatment. Pl.'s Br. at 22-23.

### 1. Unsuccessful Work Attempt

Plaintiff first asserts that the ALJ erroneously equated her "one[-]month work activity" as an "ability to work" and erroneously found it to be inconsistent with her statements that she suffered from disabling fatigue and attention deficits. Pl.'s Br. 21. When a claimant attempts to work but is forced to stop due to their impairment, this is considered an unsuccessful work attempt

and will not show that the claimant is able to do substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). An unsuccessful work attempt is a period of six months or less of work that comes after "a significant break in the continuity of . . . work." 20 C.F.R. §§ 404.1574(c), 416.974(c). "Prior work [is] 'discontinued' for a significant period if [the claimant was] out of work at least 30 consecutive days," or when the claimant was "forced to change to another type of work or another employer" due to their impairment. 20 C.F.R. §§ 404.1574(c)(2), 416.974(c)(2). The work must end or be reduced to below SGA levels either due to the claimant's impairment or "because of the removal of special conditions that took into account [their] impairment and permitted [them] to work." 20 C.F.R. §§ 404.1574(c)(3), 416.974(c)(3).

The Commissioner argues Plaintiff's seasonal job at Northwest Framing cannot be an unsuccessful work attempt because she "had a seven-week seasonal position, which she completed at substantial gainful activity levels and stopped only when the seasonal position ended." Def.'s Br. 14. The Commissioner also argues against Plaintiff's assertion that the ALJ infringed on her credibility by using her seasonal job to show inconsistency with her testimony. *Id*. The Commissioner correctly cites to SSR 16-3p which states that an ALJ can use a claimant's prior work record, efforts to work, and daily activities to weight the intensity, persistence and limiting effects of an individual's symptoms when assessing their subjective symptom testimony. *Id*. at 15. The Court agrees with the Commissioner that ALJ did not err in concluding that Plaintiff's past position at Northwest Framing shows inconsistency with her testimony. Plaintiff worked full-time "at the end of 2019" with a wholesale frame manufacturing company in Portland "assisting in building frames to cover the Christmas demand." Tr. 37-38. She took the job due to "piling bills [and the] possibility of homelessness" and stopped "because it was seasonal." Tr. 230, 264. There is no indication in the record that Plaintiff had to prematurely leave this job due to her impairments,

namely her chronic fatigue, nor was she forced to find other work because accommodations for her impairments were removed. 20 C.F.R. §§ 404.1574(c)(3), 416.974(c)(3). Therefore, this argument is unavailing. The ALJ properly used this work attempt to consider the intensity persistence and limiting effects of her symptoms to conclude that "[h]er ability to work during this period is not consistent with her reports of disabling fatigue." Tr. 21.

## 2. ADLs

Second, Plaintiff asserts that the ALJ's discussion of her ADLs "fails to explain the extent of her fatigue and persisten[t] symptoms given the factors and whole of the record." Pl.'s Br. 22. An ALJ may use activities of daily living to discredit a claimant's testimony where the activities: (1) meet the threshold for transferable work skills; or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); see also *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The Commissioner contends the ALJ did not err because she justifiably took into consideration Plaintiff's own report of her activities and part-time work. Def.'s Br. 12. The Commissioner also points out that she expressed "the hope that disability benefits would be a financial 'net' to 'catch' her when she needed it, and that the ALJ reasonably noted such statements related more to a desire for a financial safety net to support her self-employment rather than to an inability to work." *Id*. at 12-13, citing Tr. 111.[5]

---

[5] "I would like to build upon this web-sales business, but I have much to learn and realize it's hit or miss, regardless of my efforts - and it takes time to build. Therefore, I'm hoping that SSDI will be at minimum a net that can catch me when I need one." Tr. 111.

The ALJ discussed Plaintiff's ability to walk, ride a bike, and take public transportation to run her errands, conduct online sales, use marijuana, do laundry and dishes, spend hours online and participate in several different social outings as activities that are not "consistent with her allegations of disabling symptoms." Tr. 20. The ALJ acknowledged that Plaintiff does not sleep well and never feels rested, as well as her dizziness and PTSD being "triggered by 'official' things." *Id.*, citing Tr. 49. Regarding Plaintiff's part-time work running her online business and motivation for wanting benefits, the ALJ stated:

> The claimant reported in 2020 that she had a very small business where she bought and sold things online. She was hoping that disability benefits would be a net to catch her when she needed it. These statements regarding the claimant's desire to start her own business and have a safety net do not relate to her inability to work. Rather, it appears the claimant wished to use disability payments to support her self-employment. As she noted in her testimony, she travels with some frequency and she spent five weeks in Port Townsend with a friend. *Id.* (internal citations omitted).

Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). The ALJ cited Plaintiff's statement, that disability benefits are a "net" that can "catch" her if her online business sales are not enough to support her, as inconsistent with allegations that her impairments were "blocking her abilities" to work. Tr. 20, 39. This statement paired with Plaintiff's ability to take "respite" for five weeks and run a small business was permissible evidence for the ALJ to consider. Tr. 44, 896; *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (explaining that part-time work during the period of alleged disability is a valid reason to discredit the claimant's testimony); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that despite her claims of back pain, depression, and fatigue, the claimant was able to manage her own personal needs, cook, clean, shop, interact with her boyfriend and nephew, and manage her own finances and although other interpretations of such evidence is possible, the ALJ's

was rational.) Here, the ALJ's reasoning was rational considering the plethora of activities Plaintiff does despite her limitations. Therefore, the ALJ did not err in her consideration of Plaintiff's ADLs.

### 3.  Inconsistency with the Medical Record

Third, Plaintiff argues "the ALJ cites a single examination from 2020, finding it 'inconsistent' with [her] statements." Pl.'s Br. 23. She then argues that "[t]his alone does not allow for finding [Plaintiff] unlimited in her neurocognitive disorder." *Id*. "We will consider whether there are any inconsistencies in the evidence and the extent to which there are conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your impairments affect you." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

The Commissioner argues that when objective medical evidence is inconsistent with a claimant's testimony, the "ALJ may indeed weight it as undercutting such testimony." Def.'s Br. 13; *see Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). The Commissioner argues that several physical examinations revealed largely normal findings, including strength, gait and range of motion. Def.'s Br. 13, citing Tr. 464, 448-49, 898-89. The Commissioner further points out that she told her physician she was "feeling well" and that objective evidence shows she had no residual deficit from her stroke. *Id*. at 13, citing Tr. 448, 967.

Here, the ALJ did not cite a "single examination from 2020" to show inconsistency. In fact, the ALJ cited two visits with Plaintiff's neurologist, Dr. Vitalie Lupu, and treatment notes from Dr. Chun Khai Chong. Tr. 22, citing Tr. 462-67, 896-900, 967. Specifically, Plaintiff's more recent visit does show significant improvement in her symptoms, as Dr. Lupu stated:

> [Plaintiff] was supposed to have nerve conduction studies/EMG to evaluate for paresthesias and weakness, but because her bus was late the patient decided to have a follow-up

appointment instead and discuss utility of EMG/NCV especially that many of her symptoms have improved. She spent 5 weeks in the Olympic Peninsula with a friend and felt much better in terms of energy and blood pressure. Her left tennis elbow has improved, her right hand numbness improved and left foot numbness is better. Tr. 896.

The ALJ discussed Dr. Lupu's observations and found "[Plaintiff]'s report of improvement, along with her description of engaging in travel, suggests her symptoms are not as limiting as she alleged." Tr. 22. In addition, the ALJ stated "the normal physical examination results are not consistent with her allegations." *Id*. Dr. Lupu's 2021 treatment notes show inconsistency in Plaintiff's reports of completely disabling impairments from CFS and attention deficits. Alongside Plaintiff's account of her own symptom improvement, Dr. Lupu's observations show Plaintiff was alert with intact attention and normal affect, as well as her "fund of knowledge to recent and remote events [as] normal." Tr. 464, 898. Therefore, Plaintiff's argument that the ALJ cited to one examination to show inconsistency is unavailing when looking at the entirety of the ALJ's decision. Pl.'s Br. 23; Tr. 21-22. Dr. Lupu also observed Plaintiff's normal physical movements, strength, gait, sensations, and reflexes, all of which correlate with her ability to travel. Tr. 898-899. Dr. Lupu mentions two instances where Plaintiff travelled for an extended period of time. Tr. 896. The ability to travel may undermine a claimant's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that "travel to Venezuela for an extended time" undermined the claimant's credibility). Plaintiff traveled to the Olympic Peninsula for five weeks to get some "respite" so she could "get out of [her] roommate's hair[,]" and camped at Mt. Hood for one week. Tr. 44, 896. While Plaintiff might be able to endure substantial pain and fatigue for several weeks to get some "respite" at the Olympic Peninsula, a week-long camping trip, which presumably involves walking, hiking, bending down and reaching up to set up camp, along with other outdoor activities, directly contradicts Plaintiff's testimony. Therefore, the ALJ did not err in her discussion showing inconsistency between Plaintiff's testimony and the medical evidence.

### 4. Improvement with Treatment

Lastly, Plaintiff contends the ALJ's conclusion that her treatment has been largely "conservative" and that her conditions have "improved" is erroneous. Pl.'s Br. 23. Specifically, Plaintiff argues the ALJ "does not discuss [Plaintiff]'s lengthy attempts to diagnose and treat her *neurocognitive disorder* signs and symptoms or CFS." *Id*. She further argues the ALJ failed to discuss the reason why she stopped using Bupropion and that she "was attempting to pursue treatment but was unable to do so." *Id*., citing Tr. 734, 830, 916, 967.

Though improvement with treatment is a very common reason for an ALJ to reject symptom testimony, it is error to isolate a few isolated instances of improvement in the medical record as a basis for concluding a claimant is capable of working. *Garrison*, 759 F.3d at 1017 (citation omitted). It is common for mental health symptoms to wax and wane, such that cherry-picking the record for facts that support the non-disability decision while ignoring others to paint an inaccurate picture of the record as a whole is reversible error. Applicable to this case is that "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [her] symptoms." *Id*. (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)); *see also Attmore v. Colvin*, 827 F.3d 872, 877-79 (9th Cir. 2016) (ALJ erred by finding improvement where claimant continued to have functional impairments and improvement was not sustained).

The Commissioner argues that though Plaintiff stopped taking Bupropion because it was raising her blood pressure, she instead started Wellbutrin, which the ALJ noted improved her mental symptoms. Def.'s Br. 16. The Commissioner also argues that Plaintiff's failed attempt at finding a psychiatrist or psychologist "does not undermine the ALJ's finding that she discontinued

psychiatric services in July 2019." *Id.*; Tr. 22, citing Tr. 720. Nor does it undermine her symptoms of improvement with Wellbutrin, "even without counseling." *Id.*

The ALJ acknowledged Plaintiff's diagnosis of depression, but noted she discontinued counseling in 2019 because she was "discharged for failing to show up to appointments." Tr. 22, citing Tr. 720. The ALJ then cited one mental health assessment from Plaintiff's counselor that revealed Plaintiff looked "more relaxed/less intense than in past" due to Wellbutrin, as a sign of improvement. Tr. 712. Plaintiff is correct that it is harmful error for an ALJ to cite one instance of improvement with treatment to discount subjective symptom testimony. However, as discussed, the ALJ provided three other clear and convincing reasons, supported by substantial evidence to reject Plaintiff's subjective symptom testimony. The ALJ's citation to Plaintiff's part-time work, her ADLs, and testimony inconsistent with medical evidence is "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958 (9th Cir. 2002). Therefore, the ALJ provided three clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony.

## <u>REMEDY</u>

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and

further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), as amended (Feb. 5, 2016). Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts . . . serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, as to the first requisite, the Court has already explained that the ALJ's RFC failed to include any consideration of Plaintiff's non-severe impairments. The RFC is also unsupported because Dr. Carrello's medical opinion was not properly evaluated alone, nor in concert with the other medical opinions provided. Because of this error, the ALJ overlooked a significant conflict in the record. Tr. 22. "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). As discussed, Dr. Carrello's medical opinion expounded on Plaintiff's mental impairments and provided insight on how her mental impairments could possibly impede her chances for competitive employment. However, from the Court's perspective, Dr. Carrello's medical opinion conflicts with that of Dr. Chun Khai Chong, who opined Plaintiff had *no* residual deficits from her stroke. This finding contradicts Dr. Carrello's statement that Plaintiff's "brain

pathology changes also underlie[] her current cognitive weaknesses." Tr. 763. This indicates that the record is not fully developed on the question of Plaintiff's functional limitations sufficient to formulate an RFC and determine whether Plaintiff is disabled. Further proceedings are therefore appropriate.

This case is therefore remanded for further administrative proceedings. On remand, the ALJ shall: (1) properly evaluate Dr. Carrello's "Neuropsychological Evaluation" as a medical opinion via 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); (2) reformulate the RFC considering Plaintiff's mental impairments of mild vascular neurocognitive disorder, major depressive disorder and PTSD. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Peter B. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 134986, 2022 WL 3010162, at *3 (remanding for further proceedings and instructing the ALJ to develop the record further when the RFC is not supported by substantial evidence).

## <u>CONCLUSION</u>

For the reasons stated above, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this <u>15th</u> day of May 2024.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge